## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DIVISION

**DAVID MARQUAR**                                                    **PLAINTIFF**

**VS.**                                     **CIVIL ACTION NO.: 1:11-CV-00054-LG-RHW**

**OFFICER CHRIS ALLEN , INDIVIDUALLY
AND IN HIS OFFICIAL CAPACITY AS A
DULY COMMISSIONED POLICE OFFICER
FOR THE CITY OF WAVELAND, MS, ET AL.**                **DEFENDANTS**

---

### AMENDED MEMORANDUM IN SUPPORT OF
### DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

---

COME NOW, Defendants the City of Waveland, Mississippi, Chris Allen, James Varnell, and Mayor David Garcia, in their official and individual capacities (collectively, "Municipal Defendants"), by and through their attorneys of record, and respectfully submit this Amended Memorandum in Support of their Motion for Summary Judgment.

### INTRODUCTION

Plaintiff David Marquar was arrested during a Super Bowl party at his residence. He admits he was drinking heavily and that—when Officer Chris Allen asked him to keep the noise down—he told the officer to "get your ass out of my pool house."  Officer Allen reports that Marquar went even farther, jerking away from attempts to restrain him, and announcing, "I'm not going to f**king jail."  After a warning, Allen deployed his taser.  Predictably, Marquar denies physically resisting the officer, but it does not matter.  He was convicted of resisting arrest and did not appeal, which means his Fourth Amendment excessive force claim is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994).

Marquar's remaining claims fail for similarly clear-cut reasons.  For example, his Fourteenth Amendment claim is barred by *Graham v. Connor*, 490 U.S. 386, 395 (1989), which

**EXHIBIT**

tabbies®

**1**

prohibits plaintiffs from repackaging Fourth Amendment claims as violations of substantive due process. His Fifth Amendment claim fails because that Amendment applies only to actions by the federal government. His state law assault and battery claims are barred by the immunity provisions of the Mississippi Tort Claims Act (MTCA) and his false arrest and imprisonment claims fail because he was successfully convicted. The list goes on, and is set forth fully below.

In short, this is a case in which factual disputes exist, but are immaterial. Even if one accepts Marquar's dubious version of events as true, his claims are barred by settled law. The Court should grant summary judgment for the Municipal Defendants and dismiss Marquar's claims pursuant to Rule 56 of the Federal Rules of Civil Procedure.

## FACTUAL BACKGROUND

On February 7, 2010, Plaintiff David Marquar was holding a Super Bowl party at his home in Waveland, Mississippi. *See* Deposition of David Marquar at 32 (Motion Exhibit 1). The New Orleans Saints were, of course, en route to a historic 31-17 win over the Indianapolis Colts. Marquar, like most everyone else in the region, was understandably excited. Unfortunately, that excitement—coupled with alcohol consumption—led Marquar to make some very poor choices in his interaction with police, and ultimately, to his conviction for resisting arrest and disturbing the peace.

**I.      The Disturbance Call**

At around 7:30 p.m., Officer Chris Allen responded to a loud music disturbance call on Longo Street in Waveland. *See* Deposition of Chris Allen at 17-18 (Motion Exhibit 2). When Allen arrived in the neighborhood, he drove toward the source of the noise. *See id.* at 18. He arrived at a party and encountered Joey Dedeaux, a party guest whom he knew personally. *See id.* Dedeaux took Allen to meet the owner of the property, Keith Marquar, who is the son of

Plaintiff David Marquar. *See id.* Allen asked Keith to turn down the music playing through his speakers and Keith promptly complied. *See id.*

With the music turned down, Allen still heard loud noises coming from the adjacent yard. *See id.* at 19. Specifically, it appeared that the audio of the Super Bowl was being broadcast loudly from speakers on the outside of a pool house. *See id.* Dedeaux explained that the pool house was on an adjacent property belonging to Keith Marquar's father, David Marquar. *See id.* Dedeaux accompanied Allen to the pool house in David Marquar's backyard, which contained approximately twenty-five partygoers. *See id.* at 19; *see* Marquar Depo. at 34. Allen asked Dedeaux to go inside and ask the owner to turn the volume down. *See* Allen Depo. at 19.

## II.    The Altercation With Marquar

At this point, accounts of the events diverge sharply. Briefly, Allen testified that Marquar became irate and told Dedeaux to "get the f\*\*king police out of here." *Id.* at 20. Marquar, who was visibly intoxicated, then turned to Allen and said, "Get the f\*\*k off my property; get the f\*\*k out of here; I don't know why you're here." *Id.* At this point, because he believed the large crowd could turn hostile, Allen backed away from the pool house and radioed for backup. *See id.* at 21.

Shortly after Officer Henry Bouganim arrived, Marquar exited the pool house and continued swearing at Allen. *See id* Allen told Marquar he was under arrest, but Marquar simply walked away, stating "I'm not going to f\*\*king jail." *Id.* Allen tried twice to grab Marquar's arm, but he jerked it away both times. *See id.* at 21-22. Allen then loudly warned Marquar that, if he did not stop resisting, he would deploy his taser. *See id.* at 22. Marquar still refused to comply, so Allen deployed the taser for a standard five-second cycle. *See id.*

Not surprisingly, Marquar's version is very different. It is categorically false, but the Court should assume it is true for purposes of summary judgment. Marquar admits that, by the

time Officer Allen arrived, he had consumed multiple alcoholic beverages. *See* Marquar Depo. at 38. He further admits that, when he first encountered Officer Allen, he told him: "Get your ass out of my pool house." *Id.* at 61. Marquar claims he did not know Allen was a police officer at this point, but Allen had no way of knowing his subjective beliefs.

Marquar says that Allen told him to keep the noise from the party down. *See id.* at 45. He says that his wife told Allen she would keep the volume under control, at which point Allen left the pool house. *Id.* at 45-46. Marquar says that several minutes later, his wife suggested, "let's just turn the [volume of] the game up here in the pool house because the police are gone." *Id.* at 47. Then, shortly before halftime, Marquar went to use the restroom in the pool house. *See id.* at 49.

Marquar claims that, upon exiting the restroom he was immediately tased by Officer Allen "without provocation" and with no warning *Id.* at 49-50. When asked during his deposition, Marquar repeatedly and emphatically denied resisting arrest in any way—verbally or physically—at any point during his encounter with Officer Allen. *See id.* at 50-52. This is significant because it precludes Marquar from arguing that he resisted at one point, then stopped, then was subjected to excessive force. As discussed below, this means he cannot evade dismissal under *Heck v. Humphrey*.

**III.    The Aftermath**

Marquar says he cannot remember what happened between the time he was tased and the time he was placed in an ambulance. *See id.* at 56-57. Officer Allen recalls that Marquar fell to the ground, and several partygoers "became very irate," and began threatening Allen and Officer Bouganim. *See* Allen Depo. at 22. The two got Marquar to his feet and assisted him across the yard to Allen's patrol car. *See id.* About halfway across the yard, Marquar fell to the ground,

saying he could not walk. *See id.* At this point, a group of partygoers was following the officers and yelling at them. *See id.*

Marquar was placed in an AMR ambulance and taken to Hancock Medical Center. *See id.* at 23. The patient form prepared by paramedics shows that Marquar admitted to heavy use of alcohol. *See* Patient Care Report (Motion Exhibit 3). At the hospital, Marquar was monitored and received medication. He admits that, when the Saints intercepted Peyton Manning to seal their victory, he stood up and danced, yelled "Who Dat?", and asked the nurse for another Crown and Coke. *See* Marquar Depo. at 71.

In April 2010, Marquar was convicted by the Waveland Municipal Court of resisting arrest and disturbing the peace. *See* Municipal Court Order (April 19, 2010) (Motion Exhibit 4); Custody Form (Motion Exhibit 5). He was represented by counsel at the time, but did not appeal the conviction. *See* Marquar Depo. at 26-27.

## STANDARD OF REVIEW

Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); *see also Celotex v. Catrett*, 477 U.S. 317 (1986). To avoid summary judgment, a plaintiff must produce evidence of "specific facts showing the existence of a genuine issue for trial." *Foulston Siefkin LLP v. Wells Fargo Bank of Texas N.A.*, 465 F.3d 211, 214 (5th Cir. 2006). A factual issue is "material" only if its resolution could affect the outcome of the action. *See, e.g., Burrell v. Dr. Pepper/Seven Up Bottling Group, Inc.*, 482 F.3d 408, 411 (5th Cir. 2007). A plaintiff cannot resist summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

PD.7968616.1

# ARGUMENT

### I.   Marquar's Fourth Amendment Claim Is Barred By *Heck v. Humphrey*.

The crux of Marquar's lawsuit is his Fourth Amendment excessive force claim. If Marquar were to prevail on this claim, however, it "would necessarily imply the invalidity of his conviction" for resisting arrest. *Heck*, 512 U.S. at 486-87.   The rule in *Heck v. Humphrey* prevents such contradictions by forbidding recovery where an alleged § 1983 violation "arose from the same facts attendant to the charge for which [the plaintiff] was convicted." 512 U.S. at 486-87.  In short, Marquar cannot collaterally attack his conviction through a civil lawsuit.

### A. Marquar's conviction for resisting arrest inherently conflicts with his Fourth Amendment excessive force claim.

A conviction on charges of resisting arrest is inherently incompatible with a Fourth Amendment excessive force claim. As the Supreme Court observed in *Heck*, a suspect cannot be convicted of resisting arrest unless the arrest was "lawful." *Id.* at 486, n.6.  Thus, any Fourth Amendment claim "would have to negate an element of the offense"—i.e., the lawfulness of the arrest—and is therefore barred. *Id.*  The Fifth Circuit has echoed this sentiment, holding that resisting arrest is one of "certain convictions [that] will prevent a plaintiff from bringing an excessive force claim." *Arnold v. Town of Slaughter*, 100 Fed. Appx. 321, 323 (5th Cir. 2004).

Here, Marquar's prior conviction is logically and legally incompatible with his Fourth Amendment claim. As noted, Marquar was convicted under a statute that prohibits "resist[ing] by force, or violence, or threats" any "lawful arrest." MISS. CODE ANN. § 97-9-73.   Under Mississippi law, however, an arrest is not "lawful"—for purposes of a resisting arrest charge, at least—if it involves use of excessive force by police. *See, e.g., Murrell v. State*, 655 So.2d 881, 887 (Miss. 1995); *Jones v. State*, 799 So.2d 171, 173-74 (Miss. Ct. App. 2001).  Thus, his claim cannot coexist with his conviction.

Put another way, Mississippi law confers a legal right to physically resist arrest "where the arrest is accompanied by excessive force." *Murrell*, 655 So.2d at 888; *see also Brendle v. City of Houston*, 759 So.2d 1274, 1284 (Miss. Ct. App. 2000) ("A person has a right to use reasonable force to resist an unlawful arrest."). In the analogous case of assault on a police officer, the rule has been stated explicitly: "If the jurors determined that [the officer] used excessive force, ***then they were required to render a verdict of not guilty***." *Dobbs v. State*, 950 So.2d 1029, 1033 (Miss. Ct. App. 2006) (emphasis added).

Thus, any liability for excessive force arising out of the same incident as a conviction for resisting arrest necessarily produces a contradiction in terms, which triggers *Heck*'s bar.

**B.      Marquar's factual account prevents recovery.**

Even if Marquar's resisting arrest conviction were not inherently incompatible with his Fourth Amendment excessive force claim, his own account of events precludes recovery. Plaintiffs commonly attempt to evade the rule in *Heck* by arguing that they resisted arrest at one point, then stopped, then were subjected to excessive force at some later point, thus eliminating any inherent contradiction between the conviction and the Fourth Amendment claim. *See, e.g., Bush v. Strain*, 513 F.3d 492, 498 n.13 (5th Cir. 2008). Marquar cannot rely on this argument because he flatly denies resisting arrest at ***any point*** during his encounter with Officer Allen.

Marquar testified as follows:

Q:      Hold on because I want to get this.  Your testimony is that you did not resist arrest verbally; is that right?

A:      Right.

Q:      You did not resist physically?

A:      Right.

Q:      You did not resist in any way; is that right?

A:      Right.

Marquar Depo. at 50.  Marquar continued:

> Q:   So it was not a situation where you might have resisted a
>       little and some point either before or after the tasing.
>       You're saying from the beginning of the Super Bowl Party
>       to the time you went to the hospital, you never resisted
>       arrest, right?
>
> A:   No, sir.
>
> Q:   Not once.
>
> A:   No, sir.
>
> Q:   Am I right?  Am I—in other words—
>
> A:   You are correct.  I never resisted arrest.  Never was told I
>       was under arrest.

*Id.* at 51-52.

In short, Marquar does not acknowledge resisting arrest, but then try to get around the apparent contradiction.  Instead, he would tell a jury that he never resisted arrest, period.  Thus, any recovery on a Fourth Amendment excessive force necessarily would conflict with his conviction for resisting arrest.  As this Court recently observed in another tasing case, *Daigre v. City of Waveland, et al.,* Civil Action No. 1:10-cv-568 at pp. 15-17 (S.D. Miss. Sept. 25, 2012) (copy attached), this conflict between the conviction and the plaintiff's own version of events means the Fourth Amendment claim is barred under *Heck.*

## II.  Marquar's Fourteenth Amendment Claim Is Barred.

Marquar's complaint refers in passing to a violation of the Fourteenth Amendment.  *See* Complaint ¶ 34.  The Supreme Court has made clear, however, that a substantive due process claim under the Fourteenth Amendment cannot be used as an alternative vehicle for what is really a straightforward Fourth Amendment excessive force claim.

As a preliminary matter, Marquar's complaint does not specify what type of Fourteenth Amendment claim he raises, but there is only one possibility.  Marquar does not allege that the

PD.7968616.1

Municipal Defendants treated him differently based on his race or other protected status, or that they failed to provide any procedural protections. *See, e.g.,* Marquar Depo. at 94-96.[1] Thus, he has no Fourteenth Amendment equal protection or procedural due process claim. The only remaining possibility under the Fourteenth Amendment is a substantive due process claim. That is unavailable because the Fourth Amendment provides a clear remedy.

Where a particular Amendment "provides an explicit textual source of constitutional protection" against a particular kind of government action, "that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Graham v. Connor*, 490 U.S. 386, 395 (1989). Marquar does not allege that he was denied procedural rights in the prosecution of his case; what he is challenging is the force used during his arrest. That claim is governed by the Fourth Amendment. *See Graham*, 490 U.S. at 395. Consequently, Daigre's Fourteenth Amendment claim is barred. *See Albright v. Oliver*, 510 U.S. 266, 273 (1994); *Conn v. Gabbert*, 526 U.S. 286, 293 (1999).

### III. Marquar's Fifth And Eighth Amendment Claims Fail.

Marquar's complaint also contains references to the Fifth and Eighth Amendments. *See, e.g.,* Complaint ¶ 34. These references do not include facts sufficient to state a claim. *See generally Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Even if they did, any claim under these amendments would be barred by settled law.

The Fifth Amendment "applies only to violations of constitutional rights by the United States or a federal actor." *Jones v. City of Jackson*, 203 F.3d 875, 880 (5th Cir. 2000). The City

---

[1] Marquar's complaint refers in passing to "procedural … due process" and "equal protection." *See* Complaint ¶ 35. These references appear to be legal boilerplate. First, the same allegations appear in each of the six complaints filed by attorney Bobby Moak concerning taser use by the Waveland police department. Second, the Marquar complaint does not include any factual allegation indicating that Marquar was denied equal protection on the basis of any protected characteristic or denied any procedural protections. As noted above, Marquar admitted in his deposition no such violations occurred.

of Waveland and its officers are, of course, not federal actors.  Thus, any claim under the Fifth Amendment fails.

Likewise, the Fifth Circuit consistently has held that the protections of the Eighth Amendment apply only to convicted inmates, not suspects or even pretrial detainees. *See, e.g., Hare v. City of Corinth, Miss.*, 74 F.3d 633, 639 (5th Cir. 1996), citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  Marquar admits that he was never incarcerated and does not allege any mistreatment by the Municipal Defendants after his conviction. *See* Marquar Depo. at 95-96. Consequently, he has no claim under the Eighth Amendment. *See, e.g., Abshure v. Prator*, 392 Fed. Appx. 267, 268 (5th Cir. 2010) (The "Eighth Amendment applies to treatment of prisoners, not pretrial detainees.").

## IV.    Claims Against The City Of Waveland Fail For Lack Of The Required Municipal Policy Or Custom.

Marquar has no evidence that his alleged injury was caused by a municipal policy or custom.  Consequently, even if his federal claims did not fail on their merits, he could not recover from the City of Waveland or the officers in their official capacities.

### A.    Marquar cannot show the required municipal policy or custom.

There is no respondeat superior liability under Section 1983. *See, e.g., Estate of Davis ex rel. McCully v. City of North Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005). A municipality cannot be held liable unless a police officer's alleged constitutional violation proximately resulted from a municipal policy or custom. *See, e.g., Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 169 (5th Cir. 2010). For purposes of § 1983, a claim against a municipal employee in his official capacity is "in essence, a suit against the municipality," and requires the same showing of a policy or custom. *Brumfield v. Hollins*, 551 F.3d 322, 331 n.9 (5th Cir. 2008), citing *Woodard v. Andrus*, 419 F.3d 348, 352 (5th Cir. 2005).

PD.7968616.1

Thus, to prevail on claims against the City of Waveland or the individual defendants in their official capacities, Marquar must show his alleged injury was caused by (1) "a policy statement, ordinance, regulation or decision that is officially adopted and promulgated by the municipality's lawmaking officers," or (2) "a persistent widespread practice of city officials or employees, which … is so common and well settled as to constitute a custom that fairly represents municipal policy." *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984) (en banc), *cert denied*, 472 U.S. 1016 (1985).  Marquar fails both tests.

First, there certainly is no municipal "policy statement, ordinance, regulation" or other official city policy calling for the use of tasers, or the use of force generally, in circumstances not permitted by the Fourth Amendment.  Before liability will attach, the Fifth Circuit requires a policy that affirmatively and proximately causes the challenged act, not the mere lack of some hypothetical policy to prevent it. *See, e.g., Burge v. Parish of St. Tammany*, 187 F.3d 452, 471 (5th Cir. 1999).  No such affirmative policy exists here.

To the contrary, the Waveland Police Department's Electronic Control Weapons policy states that, "absent exigent circumstances," a TASER should be used only "against persons who are actively resisting or exhibiting active aggression, or to prevent individuals from harming themselves or others."  See Electronic Control Weapons Policy at 1 (Motion Exhibit 6).  Officers receive training on this policy as well as on the proper deployment of TASERs and the use of force in general. *See* Allen Depo. at 7-11, 58-59.

Second, Marquar cannot identify any "persistent widespread practice" of violating the Fourth Amendment that amounts to a municipal "custom."  Under Fifth Circuit law, an act by a municipal employee rises to the level of a "custom" only if it "results from the decision or acquiescence of the municipal officer or body with final policymaking authority over the subject matter of the offending policy." *Peterson v. City of Fort Worth, Texas*, 588 F.3d 838, 847 (5th

11

Cir. 2009), quoting *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989).  There was no affirmative decision by a municipal policymaker that led to any constitutional violation. Instead, the department's written policy manual required caution in the deployment of TASERs.

Likewise, Marquar has no evidence that the City of Waveland somehow "acquiesced" to any practice that violates the Fourth Amendment.  A municipality cannot be held liable under Section 1983 absent evidence that policymakers knew of a pattern of violations, but looked the other way.  *See Pineda v. City of Houston*, 291 F.3d 325, 330-31 (5th Cir. 2004); *Milam v. City of San Antonio*, 113 Fed. Appx. 622, 626 n.3 (5th Cir. 2004)(copy attached).  The policymakers in Waveland are the Mayor and Board of Aldermen.[2]  There is no evidence that, prior to Marquar's arrest in February 2010, the mayor or aldermen had been informed of ***even a single instance*** in which Waveland police were found to have violated the law, much less any pattern or "custom" of abusing tasers or using excessive force. Thus, Marquar's federal claims against the City and the individual defendants in their official capacities fail under settled law.

**B.      Marquar's failure to train and negligent hiring theories are meritless.**

Because he cannot establish the required causal link to a municipal policy, Marquar falls back to the alternative argument that the City negligently hired or negligently trained its police officers.  *See* Complaint ¶¶ 40-46.  The arguments fail for multiple reasons.

**1.      Failure to train officers**

Marquar's failure to train theory fails for two reasons.  First, there is no evidence of a failure to train officers in the use of tasers.  During his deposition, Marquar conceded that he did not know what the City's policies were with respect to tasers, and did not know who set the policies.  *See* Marquar Depo. at 96.  The undisputed fact is that Officer Allen had been certified

---

[2] *See generally  Peterson v. City of Fort Worth, Texas*, 588 F.3d 838, 847 (5th Cir. 2009) (policymaker consists of persons with final policymaking authority over the subject matter).

in taser use prior to being hired by the Waveland Police Department, and was recertified by TASER International after being hired. *See Allen Depo.* at 6-11. Further, it is undisputed that Allen received his law enforcement certification from the state police academy, which by itself precludes liability under a failure to train theory. *See, e.g., Sanders-Burns v. City of Plano*, 594 F.3d 366, 381-82 (5th Cir. 2010); *see Allen Certification* (Motion Exhibit 7).[3]

Second, Marquar cannot establish the required deliberate indifference. An allegation of failure to train police officers "can only yield liability against a municipality where [its] failure to train reflects deliberate indifference to the constitutional rights of its inhabitants." *Fleming v. Tunica County, Miss.*, 2012 WL 4753381 at *2 (5th Cir. 2012), quoting *City of Canton v. Harris*, 489 U.S. 378, 392 (1989). Deliberate indifference "is a high standard," such that "a showing of simple negligence or even heightened negligence will not suffice." *Valle v. City of Houston*, 613 F.3d 536, 542 (5th Cir. 2010). Instead, the Fifth Circuit requires a disregard for "a known and obvious consequence" of inaction. *Brown v. Bryan County*, 219 F.3d 450, 457 (5th Cir. 2000).

As noted above, in February 2010, there was no "known risk" to which the Board of Aldermen could have been deliberately indifferent. The Board had not been informed of a single instance in which a police officer violated the law in using a taser. Thus, even if Allen had not received training, the failure to provide it was at most negligence, not actionable deliberate indifference.

## 2. Negligent hiring and supervision

In a last ditch effort, Marquar tries to evade both the "policy or custom" and "deliberate indifference" standards by repackaging his federal claims under § 1983 as actions for negligence.

---

[3] Specifically, where a police officer has completed the minimum training requirements under state law, a plaintiff cannot prevail on a deliberate indifference "failure to train" theory unless he shows that the state training standards are inadequate. *See Sanders-Burns*, 594 F.3d at 381-82, citing *Benavides v. County of Wilson*, 955 F.2d 968, 973 (5th Cir.1992). Marquar has not even alleged, much less established, that Mississippi's training standards for police officers are constitutionally inadequate.

Specifically, he alleges that the City was somehow negligent in hiring or supervising Officer Allen. *See* Complaint ¶¶ 44-46.   However, as this Court recently noted in another police taser case, "Section 1983 provides no redress for negligence." *Jez v. City of Waveland,* 2012 WL 192534 at *4 (S.D. Miss. 2012), citing *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir.1999). Thus, Marquar's negligence theory fails under settled law.

## V.      Marquar's Claims Against The Mayor And Police Chief Fail.

Marquar lists Mayor David Garcia and former police chief James Varnell as defendants, naming both their individual and official capacities.  As noted, a suit against municipal officials in their official capacities is functionally the same as a suit against the city itself.  Thus, the official capacity claims against Garcia and Varnell fail for all the reasons given above in Part IV.

Marquar's claims against Garcia and Varnell individually likewise fail.   During his deposition, Marquar flatly admitted that David Garcia was not the mayor at the time of his tasing and had not done anything to harm him. *See* Marquar Depo. at 104-05.  Marquar also admitted that James Varnell was not present at the scene when the tasing occurred. *See id* at 104.  He suggested that Varnell might have "looked into the case" but then admitted that he never filed an internal complaint with the Waveland Police Department. *See id.*

In short, Marquar cannot point to any violation for which Varnell or Garcia could be individually liable.  The claims against them should be dismissed.

## VI.      Marquar's Conspiracy Claims Fail.

Marquar next raises claims of conspiracy under 42 U.S.C. § 1985 and 1986.  Section 1985 does not create federal causes of action for conspiracy generally.   It applies only to conspiracies to intimidate public officials or obstruct justice, or to deny rights on the basis of race or other protected status. *See, e.g., Bryant v. Military Dep't of Miss.*, 597 F.3d 678, 687 (5th

Cir. 2010). Section 1986 addresses failure to prevent such a conspiracy, and requires the same

showings. *Bryan v. City of Madison, Miss.*, 213 F.3d 267, 276 (5th Cir. 2000).

Marquar is not a public official and his complaint does not allege that his tasing was the

result of class-based bias. In his deposition, Marquar expressly conceded that the tasing did not

occur because of his race or other protected status. *See* Marquar Depo. at 94. Thus, his claims

under Sections 1985 and 1986 fail as a matter of law.

Marquar's federal and state law conspiracy claims also fail on their merits. A civil

conspiracy requires actual evidence of an agreement between parties to commit an unlawful act.

*See, e.g., Braddock Law Firm, PLLC v. Becnel,* 949 So.2d 38, 44 (Miss. Ct. App. 2006). During

his deposition, Marquar was asked point blank: "What evidence do you have that people at the

City of Waveland, other than Officer Allen, got together and conspired or communicated in an

effort to harm you?" Marquar Depo. at 97. He responded, "None." *Id.* For this additional

reason, his federal and state law claims should be dismissed.

**VII.    Marquar's State Law Claims Are Time Barred By The Mississippi Tort Claims Act.**

All of Marquar's claims under Mississippi state law are barred because he failed to

comply with the notice requirements of the Mississippi Tort Claims Act (MTCA). The MTCA

requires claimants to file a notice of claim with the city's chief executive officer before filing a

lawsuit. *See* MISS. CODE ANN. 11-46-11(1). The notice must contain specific information about

the claim, including the nature and extent of the injury , the names of persons involved, and the

"amount of money damages sought." *See id.* at § 11-46-11(2). There is a one year statute of

limitations on claims under the MTCA, and failure to file the required notice within the one year

period means the claims are time barred. *See, e.g., Little v. Miss. Dep't of Human Serv's*, 835

So.2d 9, 12 (Miss. 2002).

The MTCA's notice requirement "is a hard-edged, mandatory rule which the Court strictly enforces." *Univ. of Miss. Med. Ctr. v. Easterling*, 928 So.2d 815, 820 (Miss. 2006). Here, Marquar made no attempt to comply with the notice requirements of the statute. As of this filing, more than two years have passed since his February 2010 arrest, so it is far too late to remedy the lack of notice. Consequently, all of Marquar's claims under state law are barred by the notice provisions of the MTCA.

Further, even if the MTCA notice requirement did not apply here, Marquar's complaint was filed on February 8, 2011, which was one year and one day after his February 7, 2010 arrest. Thus, his claims of intentional infliction of emotional distress, assault, battery, false arrest, unlawful imprisonment, and malicious prosecution are barred by Mississippi's one year statute of limitations for intentional torts. *See* MISS. CODE ANN. § 15-1-35; *see also Jones v. Fluor Daniel Services Corp.*, 32 So.3d 417 (Miss. 2010) (IIED claim governed by one year statute of limitations).

## VIII.   Marquar's Assault And Battery Claims Are Barred By Immunity Provisions Of The Mississippi Tort Claims Act.

Marquar's state law assault and battery claims are barred by the police exemption to the Mississippi Tort Claims Act (MTCA). The exemption bars recovery against police officers, "unless the [officer] acted in reckless disregard of the safety and well-being of any person not engaged in criminal activity at the time of injury." MISS. CODE ANN. § 11-46-9(1)(c). Thus, to recover in tort from a police officer or municipality, a plaintiff must establish (1) that he was not committing a crime; and (2) that police acted with reckless disregard for his safety. *See, e.g., Chapman v. City of Quitman*, 954 So.2d 468, 474 (Miss. Ct. App. 2007).

Here, Marquar fails the first requirement. His conviction establishes as a matter of law that he was committing a crime, and thus precludes recovery. Under Mississippi law, a guilty plea renders "conclusive ... the facts upon which the conviction was based and the doctrine of res

judicata applies to [any] civil proceeding." *J.R. ex rel. R.R. v. Malley*, 62 So.3d 902, 906 (Miss. 2011), quoting *Jordan v. McKenna*, 573 So.2d 1371, 1376 (Miss. 1990). Criminal defendants are thus precluded from re-litigating factual determinations necessary to their conviction via subsequent civil lawsuits. *See id.*

More specifically, the Mississippi Supreme Court has held that a criminal conviction for an activity that shares some "causal nexus" with the plaintiff's arrest will trigger police immunity and bar recovery. *See Giles v. Brown*, 962 So.2d 612, 614-15 (Miss. 2006). In cases involving injuries sustained during an arrest, the nexus requirement is met "where an officer has probable cause to arrest and proceeds to do so." *City of Jackson v. Powell*, 917 So.2d 59, 70 (Miss. 2005). Further, just as with federal claims under *Heck*, "until the convictions are reversed, [the court] must treat [them] as binding" and a *per se* bar to liability. *Id.* at 616, n.4.

Here, Marquar's resisting arrest conviction stems from the exact same set of events that give rise to his assault and battery claims. He concedes that both the resisting arrest charge and the alleged assault and battery stemmed from the altercation with Allen at the Super Bowl party. *See* Marquar Depo. at 29. His conviction means that his arrest necessarily was lawful, which means his assault and battery claims are barred by the MTCA.

## IX.    Marquar's False Arrest, Unlawful Imprisonment, and Malicious Prosecution Claims Fail Because He Was Found Guilty Of Resisting Arrest.

Marquar next raises claims of malicious prosecution, false arrest, and unlawful imprisonment. *See* Complaint ¶¶ 62-67. Here again, his conviction prevents recovery, as it establishes as a matter of law that neither his arrest nor any imprisonment was unlawful.

Claims of false arrest and imprisonment fail if the arrest was supported by probable cause. *See, e.g., Mayweather v. Isle of Capri Casino, Inc.*, 996 So.2d 136, 141 (Miss. Ct. App. 2008), citing *Price v. Roark*, 256 F.3d 364, 369 (5th Cir. 2001). Likewise, claims of malicious

prosecution fail if the plaintiff was convicted. *See, e.g., Bearden v. BellSouth Telecomm., Inc.,* 29 So.3d 761, 76 4 (Miss. 2010)

As noted, Marquar was convicted under MISS. CODE ANN. § 97-9-73, which applies only to a "lawful arrest." An arrest without probable cause cannot be a "lawful arrest." *See, e.g., Brown v. Hill*, 438 Fed. Appx. 336, 337 (5th Cir. 2011). Marquar's conviction for resisting arrest renders "conclusive ... the facts upon which the conviction was based," including the lawfulness of the arrest—and by extension, the existence of probable cause. *Malley*, 62 So.3d at 906. In short, Marquar's malicious prosecution claim fails because he was convicted, and his false arrest and imprisonment claims fail because his arrest necessarily was supported by probable cause.

## X.   Marquar's Emotional Distress Claims Fail For Lack Of Extreme And Outrageous Conduct.

Marquar's claims of intentional infliction of emotional distress (IIED) and negligent infliction of emotional distress (NIED) fail because Officer Allen's alleged conduct does not approach the "extreme and outrageous" standard required under Mississippi law. Marquar admits that, aside from deploying the taser, Officer Allen never said or did anything with the purpose of causing emotional distress. *See* Marquar Depo. at 100. As discussed above, Marquar's conviction conclusively establishes that he was resisting arrest at the time of the tasing, and that Allen's conduct was constitutionally reasonable.

Thus, the question is whether the lawful use of a taser against a resisting suspect meets the outrageousness requirement of Mississippi law. Mississippi requires an IIED/NIED plaintiff to show that the defendant's conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Speed v. Scott*, 787 So.2d 626, 630 (Miss.2001). Liability does not extend to "mere insults, indignities, threats, annoyances, or petty oppressions." *Raiola*

18

*v. Chevron U.S.A. Inc.*, 872 So.2d 79, 85 (Miss. Ct. App. 2004).   As this Court has noted, "meeting the requisites of a claim for intentional infliction of emotional distress is a tall order in Mississippi." *Ainsworth v. Gildea*, 2009 WL 3336111 at *3 (S.D. Miss. 2009).[4]

To state the obvious, a police officer's use of a single taser charge on a resisting suspect does not even approach the outrageousness standard.   If it did, every otherwise lawful arrest involving a taser could result in a state court verdict against the officer.   Thus, this claim fails as a matter of law.

## XI.   Marquar Has No Claim Under The "Common Law Tort of Outrage," "Trespass," Or Other "Miscellaneous" Theories.

Finally, Marquar alleges that the City is liable for the "common law tort of outrage," "trespass," as well as "additional and miscellaneous" torts. *See* Complaint at ¶ 56, § H. These claims are meritless.

First, while a handful of decisions mention the "tort of outrage" in passing, no Mississippi court has ever recognized it in any reported decision.   Even if "outrage" were a recognized tort, Allen's conduct was not outrageous for the reasons given above in Part X.

Second, to the extent a vague reference to "trespass" even states a claim, Allen did not trespass on Marquar's property.   Under Mississippi law, actionable trespass occurs only where a defendant enters the plaintiff's property "without license, invitation, or other right, and intrudes for some definite purpose of his own." *Thomas v. Harrah's Vicksburg Corp.*, 734 So.2d 312, 315, quoting *Kelley v. Sportsmen's Speedway, Inc.*, 224 Miss. 632, 644, 80 So.2d 785, 791 (1955). Regardless of what happened later, Allen indisputably entered Marquar's property with the legitimate law enforcement purpose of investigating a loud noise originating from the pool

---

[4] Additionally, Marquar's claim of negligent infliction of emotional distress is barred by the immunity provisions of the MTCA, which preclude all claims under a negligence theory of liability. *See, e.g., Rayner v. Pennington*, 25 So.3d 305, 309 (Miss. 2010) ("Police officers are not liable for negligence, which is a failure to exercise due care.").

house.  Moreover, under Mississippi law, a "police trespass" cannot occur on areas normally used by visitors. *See, e.g., Mitchell v. State*, 792 So.2d 192, 206(¶ 56) (Miss.2001).  Marquar's yard and pool house were open to visitors during the Super Bowl party, and thus any claim of trespass fails.

Finally, merely gesturing toward "miscellaneous" claims under the "common law" is insufficient even to state a claim for relief, much less survive summary judgment. *See, e.g., Irby v. Luker*, 2010 WL 2594939 at *3 (S.D. Miss. 2010) ("vague and generalized allegation that [plaintiff's] Fifth Amendment rights have been violated by the concerted actions" of defendants failed to state a claim).  Thus, the oblique references to "supplemental" claims in Section H of Marquar's complaint provide no grounds for recovery.

## CONCLUSION

For the foregoing reasons, the Municipal Defendants respectfully request that this Court grant summary judgment in their favor pursuant to Rule 56 of the Federal Rules of Civil Procedure, and dismiss all of Plaintiff's claims with prejudice, and with all costs taxed to the Plaintiff.

THIS, the 9th day of November, 2012.

Respectfully submitted,

**PHELPS DUNBAR, LLP**

BY:   */s/ W. Brett Harvey*
Gary E. Friedman, MS Bar No. 5532
W. Brett Harvey, MS Bar No. 102440
PHELPS DUNBAR LLP
4270 I-55 North
Jackson, Mississippi 39211-6391
Telephone: 601-352-2300
Telecopier: 601-360-9777
Email: friedmag@phelps.com
         brett.harvey@phelps.com
**ATTORNEYS FOR DEFENDANTS**

20

## CERTIFICATE OF SERVICE

I, BRETT HARVEY, do hereby certify that I have filed the foregoing *AMENDED*

*MEMORANDUM* via the CM/ECF system, which provided an email notice to the following

individuals:

>     Bobby Moak
>     Law Office of Bobby Moak, PC
>     402 Monticello Street
>     P.O. Box 242
>     Bogue Chitto, MS 39629
>     ***ATTORNEY FOR PLAINTIFF***

SO CERTIFIED, this the 9th day of November, 2012.

>                     /s/ W. Brett Harvey
>                     W. BRETT HARVEY